Filed 2/23/24  In re E.P. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | B330861 (Los Angeles County Super. Ct. No. 19CCJP04934A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.M., Defendant and Appellant. | |
| In re E.P., a Person Coming Under the Juvenile Court Law. | B331617 (Los Angeles County Super. Ct. No. 19CCJP04934A) |

LOS ANGELES COUNTY
DEPARTMENT OF CHILDREN
AND FAMILY SERVICES,

      Plaintiff and Respondent,

      v.

C.P.,

      Defendant and Appellant.

 

APPEAL from an order of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant J.M.

Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant C.P.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

In these consolidated juvenile dependency appeals, J.M. (mother) and C.P. (father) appeal the juvenile court's order terminating their parental rights to their young son, E.P. (son). Mother raises one issue on appeal.  She argues the juvenile court and the Los Angeles County Department of Children and Family

Services (Department) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.  Mother seeks a conditional reversal of the juvenile court's order terminating parental rights and remand so that the juvenile court can ensure compliance with ICWA.  Father joins in mother's arguments.

We conclude that any noncompliance with the duty of initial inquiry by the Department or the juvenile court is irrelevant, and that any noncompliance with their duty of further inquiry was not prejudicial.  We accordingly affirm.

BACKGROUND

## 1.    The Family

Son is mother and father's only child together.[1]  Mother was 19 years old when son was born and she herself had been a dependent of the court as a minor.  When the underlying proceedings began, she and father were married but separated and not living together.  Father recently had been released from the Marine Corps and was staying with his mother (paternal grandmother).

Mother was raised primarily by her maternal great grandmother Teresa M. and her husband.  Mother's mother (maternal grandmother) and father (maternal grandfather) were in and out of prison.  Mother's relationship with maternal grandmother was not positive.  Mother was not in contact with maternal grandfather.  At the start of the proceedings below, mother and son were living with maternal great grandmother

---

[1] Mother gave birth to her second child during the pendency of the underlying proceedings.  That child and his father are not involved in this appeal.

3

Ruth G.[2]  Mother has several siblings, some of whom are step siblings, as well as cousins who visited mother "on weekends and barbecue[d]."

## 2. Brief Case Summary

Beside their ICWA arguments, mother and father do not challenge the merits of the juvenile court's rulings. Consequently, we include only a brief summary of them and the underlying facts here.

In August 2019, when son was 10 months old, the Department filed a Welfare and Institutions Code section 300 petition on son's behalf (petition), alleging father physically abused son by biting his shoulder.[3]  Mother was not named in the petition.  Son was detained from father and released to mother under Department supervision.  At the September 2019 adjudication, father filed a waiver of rights and pleaded no contest to the petition.  The juvenile court sustained the petition as pleaded, declared son a dependent of the court, removed him from father, and ordered services for father and mother.

Son remained in mother's care under Department supervision until late 2020.  Until that time, mother had been cooperative and son was thriving in her care.  However, after great grandmother Ruth G. passed away in October 2020, mother became overwhelmed, depressed, and homeless.  She began associating with gang members, and in late 2020 and early 2021,

---

[2] A few times in the record, great grandmother Ruth G. is referred to as a step relative.  However, those references appear to be in error because she shares the same last name with maternal grandmother.

[3] Undesignated statutory references are to the Welfare and Institutions Code.

4

was arrested multiple times for possession of methamphetamine and weapons.

In December 2020, son was removed from mother's custody and placed with great grandmother Teresa M. and her husband, both of whom had raised mother and some of her siblings.[4] Great grandmother Teresa M. reported she had a "host of relatives" she could contact for assistance, including a maternal great aunt and a maternal aunt. Great grandmother Teresa M. became son's prospective adoptive parent.

In early 2021, the Department filed a subsequent petition under section 342, alleging mother was unable to care for son, and a supplemental petition under section 387, alleging mother failed to comply with juvenile court orders. The section 342 petition was amended to include allegations of mother's substance abuse and mental and emotional issues. In March 2021, the juvenile court sustained both petitions and ordered services for mother.

In November 2021, the juvenile court terminated services for mother and father. More than one year later, on July 13, 2023, the court found son was adoptable and no exception to adoption applied. The court terminated mother's and father's parental rights to son. Mother and father each appealed the court's ruling. We granted father's motion to consolidate the appeals.

3.    **Facts Relevant to ICWA**

During the Department's initial investigation, prior to filing the petition, mother and father both reported they had no

---

[4] Sometime later, great grandmother Teresa M. separated from her husband.

5

Indian ancestry. In connection with filing the petition, mother stated she had no Indian ancestry as far as she knew.

At the August 2019 detention hearing, mother and father each filed an ICWA-020 form, stating they had no Indian ancestry as far as they knew. At that hearing, the juvenile court stated it did not have a reason to know that son was an Indian child. Again, in September 2019, prior to the adjudication and disposition hearing, mother denied Indian heritage.

In March 2021, for the first time, mother reported she had "Native American Heritage with the Navajo and Cherokee Tribe." Mother stated she was "not registered to any tribe" and "she was not eligible because she did not have a certain percentage of blood." Mother said great grandmother Teresa M. would have more information.

A few days later, a Department social worker spoke with great grandmother Teresa M. Great grandmother Teresa M. believed "her family might be Cherokee." However, she said neither she, her parents, nor her grandparents resided on an Indian reservation, had been wards of a tribal court, or possessed identification cards indicating tribal membership. Great grandmother Teresa M. also reported her ex-husband (great grandfather) "might be Navajo." She believed his great great grandmother was Navajo. Great grandmother Teresa M. said great grandfather currently lived in Albuquerque, New Mexico, did not live on an Indian reservation, and was not registered with a tribe. She did not know how to contact him. Great grandmother Teresa M. also told the social worker her family and great grandfather's family had done "their own investigation regarding possible Native American Heritage and there were no documentations of any family members being registered with any

6

Native American tribes." The Department concluded, "[B]ased on the ICWA inquiry provided by the maternal great-grandmother [Teresa M.]," there was no "reason to believe that there is any Native American Heritage" and ICWA did not apply. In March 2021, the juvenile court found ICWA did not apply.

More than one year later, in September 2022, father, paternal grandmother, and great grandmother Teresa M., denied Indian ancestry. Father stated his family was Salvadoran.

In October 2022, the juvenile court ordered the Department to "Re-interview father and mother" regarding potential "ICWA heritage" and to "Interview any family members who may have known of ICWA heritage and give statement; if there is any identified tribe, notice such tribe, BIA and Department of Interior." In November 2022, father and great grandmother Teresa M. again denied Indian ancestry. Great grandmother Teresa M. also stated mother had no Indian ancestry.

In early 2023, father, mother, paternal grandmother, and great grandmother Teresa M. each reported they "did not have any affiliation of American Indian Ancestry." However, great grandmother Teresa M. also reported "the family does have American Indian Heritage." She stated, "[W]hen she adopted her granddaughter about 15 years ago, the Department looked into ICWA and they could not find their Indian Heritage." In February 2023, mother told a Department social worker "she was part Navajo and Cherokee." Subsequently, the social worker filed an ICWA-010 form indicating she had questioned mother and great grandmother Teresa M., both of whom gave the social worker reason to believe son was or may be an Indian child.

In early March 2023, the juvenile court ordered the Department to "Meet and confer with the parents within the next

7

14 days and obtain any information re: eligibility on any recognized tribes[;] Obtain names/addresses/phone numbers of all paternal and maternal relatives and contact them to determine eligibility[; and] If eligible, give notice to tribes, BIA and Department of Interior."

In a May 2023 report, the Department stated it had "provided notice" to the Navajo Nation, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma. The Department did not state it had provided notice to the Bureau of Indian Affairs or the Department of the Interior. No notices were included with the report, but the Department attached "certified receipts" to its report. The United Keetoowah Band of Cherokee Indians in Oklahoma did not respond to the Department's notice. The remaining three tribes responded either they could not verify son's eligibility to register with the tribe (Navajo Nation), son was not an Indian child (Cherokee Nation), or son was not registered and not eligible to register with the tribe (Eastern Band of Cherokee Indians). The Department attached the tribes' responses to its report.

## DISCUSSION

### 1.    Applicable Law and Standard of Review

ICWA establishes minimum standards courts must follow before removing an Indian child from his or her family. Under California law implementing ICWA, the juvenile court and the Department "have an affirmative and continuing duty to inquire whether" a dependent child "is or may be an Indian child." (§ 224.2, subd. (a); *In re Austin J.* (2020) 47 Cal.App.5th 870, 883.) For these purposes, an "Indian child" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in

8

an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition].)

Under ICWA as implemented in California, "the Department and juvenile court have 'three distinct duties.' [Citations.] The first duty is the initial 'duty' of the Department and the juvenile court 'to inquire whether [a] child is an Indian child.' (§ 224.2, subds. (a) & (b).) The Department discharges this duty chiefly by 'asking' family members 'whether the child is, or may be, an Indian child.' (*Id.*, subd. (b).) This includes inquiring of not only the child's parents, but also others, including but not limited to, 'extended family members.' (*Ibid.*)" (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 780, review granted Sept. 21, 2022, S275578 (*Dezi C.*).) "Extended family members" include the dependent child's adult "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [adopting federal law definition].) "For its part, the juvenile court is required, '[a]t the first appearance' in a dependency case, to 'ask each participant' 'present' 'whether the participant knows or has reason to know that the child is an Indian child.' ([§ 224.2], subd. (c).)" (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 780, rev.gr.)

"The second duty is the duty of the Department or the juvenile court to 'make further inquiry regarding the possible Indian status of the child.' ([§ 224.2], subd. (e).) This duty of further inquiry is triggered if the Department or court 'has reason to believe that an Indian child is involved' because the record contains 'information . . . suggesting the child is Indian' (*ibid.*; [citations]), and, once triggered, obligates the Department

9

to conduct further interviews to gather information, to contact the Bureau of Indian Affairs and state department of social services for assistance, and/or to contact the relevant Indian tribe(s). (§ 224.2, subd. (e)(2).)" (*Dezi C.*, *supra*, 79 Cal.App.5th at pp. 780–781, rev.gr.) "Reason to believe" is defined as "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

"The third duty is the duty to notify the relevant Indian tribe(s). (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) This duty is triggered if the Department or the court 'knows or has reason to know . . . that an Indian child is involved.' (§ 224.3, subd. (a).)" (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 781, rev.gr.)

We review the juvenile court's ICWA findings under the substantial evidence test. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

## 2.     Analysis

Mother makes no claim that son is an Indian child based on father's heritage. Rather, mother urges she is entitled to a conditional reversal because the juvenile court and the Department (1) did not discharge their duty of initial inquiry into whether son is an Indian child based on mother's heritage, and (2) did not discharge their duty of further inquiry based on mother's heritage.

We agree with mother that the juvenile court and the Department did not discharge their ICWA duty of initial inquiry. Although the Department repeatedly asked mother and great grandmother Teresa M. about son's heritage (and often got conflicting answers from both), the Department did not inquire of any of mother's other relatives, including then-living great

10

grandmother Ruth G., mother's cousins, mother's siblings, and maternal grandmother. However, the juvenile court ultimately ruled it had "reason to believe" son was an Indian child. That ruling supplants any deficiencies with the initial inquiry. The question then becomes: Was the Department's *further* inquiry deficient?

We once again agree with mother that the juvenile court and the Department did not discharge their ICWA duty of further inquiry. Mother points to three deficiencies in particular— namely, (1) the same failure to inquire of mother's relatives that underlies the breach of the duty of initial inquiry, (2) the failure to keep records of the informal notices the Department sent to the Navajo and Cherokee tribes, and (3) the apparent failure to send those same notices to the Bureau of Indian Affairs or the Secretary of the Interior. However, mother has not demonstrated that these deficiencies were prejudicial.

In *Dezi C.*, *supra*, 79 Cal.App.5th 769, review granted, we held that "[a]n agency's failure to discharge its statutory duty of *initial* inquiry is" not prejudicial—and hence, "harmless"— "unless the record contains information suggesting a reason to believe that the child[] at issue may be [an] 'Indian child,' in which case further inquiry might lead to a different ICWA finding by the juvenile court." (*Id.* at p. 774, italics added.) *Dezi C.* adopted this "reason to believe" standard because (1) whether an error is prejudicial as a general matter turns on whether the outcome of the proceeding would have been different absent the error; (2) an error in undertaking the initial inquiry under ICWA would lead to a different outcome only if the Department were required to conduct a further inquiry into the child's heritage; and (3) the trigger for the duty of further inquiry is whether the

11

information in the Department's possession creates a "reason to believe" the child at issue is an Indian child.  (*Id.* at pp. 779–781.)

Although *Dezi C.*'s specific holding assesses whether a deficiency in an ICWA *initial* inquiry is prejudicial, *Dezi C.*'s logic applies to deficiencies in an ICWA *further* inquiry.  Because an error in undertaking the duty of further inquiry under ICWA will lead to a different outcome only if the Department were required to give formal notice to the pertinent Indian tribes, and because the trigger for giving formal notice is whether the juvenile court or Department has "reason to know" that the child at issue is an Indian child, the standard for assessing whether the deficiencies in further inquiry are prejudicial is whether the record indicates that, absent those deficiencies, there would be a "reason to know" the child is an "Indian child."

Mother and father have not satisfied that burden. Although mother has identified maternal relatives who might be asked about son's Indian heritage, the record does not indicate they would provide any information beyond what is already known.  Moreover, mother stated she was not "registered to any tribe" and maternal great grandmother Teresa M. explained the family investigation into Indian heritage revealed no documentation of family members registered with any tribes. And while the finding in the prior dependency case that there was no Indian heritage on mother's side of the family is not dispositive because ICWA has been amended since then, it tends to refute any notion mother has Indian heritage she would pass on to son such that ICWA would be implicated.  The missing notices to the tribes, Bureau of Indian Affairs, and Secretary of the Interior ultimately are insignificant here given the other facts

just recited.  Finally, mother proffers nothing on appeal that would give rise to a reason to know that son is an Indian child.

## DISPOSITION

The juvenile court's July 13, 2023 order is affirmed.

NOT TO BE PUBLISHED.



LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.